IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JACK YARBROUGH,                  )
                                          )
          Plaintiff,                 )   TC-MD 110323N
                                          )
        v.                         )
                                          )
MARION COUNTY ASSESSOR,     )
                                          )
          Defendant.          )   **DECISION**

Plaintiff appeals the real market value of property identified as Account M131561 (subject property) for the 2010-11 tax year. A trial was held on November 7, 2011, in the Tax Courtroom, Salem, Oregon. William L. Ghiorso, Attorney at Law, appeared on behalf of Plaintiff. Plaintiff testified on his own behalf. Rick Nasset (Nasset), licensed real estate broker, also testified on behalf of Plaintiff. Scott Norris, Assistant County Counsel, appeared on behalf of Defendant. Rob Witters (Witters), Senior Residential Appraiser, testified on behalf of Defendant. Nasset prepared a broker's price opinion for the subject property. However, the broker's price opinion was not timely exchanged under Tax Court Rule-Magistrate Division 10 C and was not received into evidence. Defendant's Exhibit A was received without objection.

## I. STATEMENT OF FACTS

The subject property is a double-wide manufactured home built in 1990 that is 1,063 square-feet with three bedrooms and two bathrooms and is located in Keizer, Oregon.[1] (Def's Ex A at 1-2.) Nasset testified that he visited the subject property but did not inspect the interior. He testified that he considered the subject property to be in average condition.

/ / /

---

[1] Plaintiff testified that the subject property is 1,066 square-feet. Nasset and Witters both testified that the subject property is 1,063 square-feet.

DECISION  TC-MD 110323N                                  1

A.      *Subject property condition*

Plaintiff testified that there was a severe leak caused by the hot water heater that flooded the subject property with two inches of water and caused water damage to the floors.  He testified that the floors of the subject property have been in disrepair since the flood.  Plaintiff testified that no repairs were made to the subject property between 2009 and 2010.  He testified that the subject property suffers from rot around the siding, trim, and windows.  Plaintiff testified on rebuttal that the subject property's carpets were dried on the floor using a special vacuum and dehumidifier.  He testified that he put a new roof on the subject property "about a year and a half or two years ago."  Plaintiff testified that the roof of the subject property was never a problem; the new roof was provided as repayment for a debt owed to Plaintiff by a roofing company.

Witters stated that, "[a]ccording to the appraiser's notes within the subject property's file, as of January 15, 2008, the carpet and padding had been removed from the home.  The skirting had also been removed and repairs appeared to be under way."  (Def's Ex A at 12.)  "During a follow up visit, dated July 21, 2008, the appraiser noted damaged gypsum, particle board subfloor, and the bathroom connected to the main bedroom as being spongy.  The same appraiser then visited the property December 4, 2008.  Notes from the visit included tenant occupied, fresh exterior paint, new roof, and the replacement of the skirting.  At that time, the appraiser determined the condition issues of the [subject property] had been repaired."  (*Id.*)  Witters testified that the subject property "was considered to be rehabbed and in average condition as of October 2009.  An appraiser reappraised the area September of 2010 and considered the property [to] be in average condition.  No damage was evident."  (*Id.* at 2.)  Witters testified that the appraiser who visited the subject property in 2009 and 2010 and determined that the water damage had been repaired was Kara Driskell (Driskell), who was not available to testify at trial.

He testified that Driskell did not provide notes concerning the interior of the subject property from her September 2010 visit.

Witters testified that he drove by and viewed the exterior of the subject property in October 2011. He testified that Defendant does not always receive access to the interiors of properties and it is necessary to make an educated guess as to condition. Witters testified that he believed that the carpeting and padding in the subject property were replaced, although he was not certain. Plaintiff testified in response that insulation was mistaken for carpeting by Defendant. (*See* Def's Ex A at 3.) He testified that the fact that the skirting was removed from the subject property does not mean that the floors were repaired. Plaintiff testified that the subject property was washed, not painted as Defendant's appraiser had reported. He testified that tenants rented the subject property at the time of the flood in 2008; they received a discount because the door and deck were "unusable." Plaintiff testified that the tenants occupying the subject property in 2008 left due to a change in employment. He testified that the subject property was rented on January 1, 2010, for about $600 to $650, but was not rented as of the trial date.

B.    *Subject property valuation*

Nasset testified that he completed a broker's price opinion for the subject property based on data that he collected from the regional multiple listing service using the parameters of location, size, and age. He testified that he did not find any properties smaller than the subject property that were not also much older. Nasset testified that prices for manufactured dwellings ranged from $2,000 to $40,000. He testified that he sought to bracket the subject property with respect to size and age. Based on those sales and listings, he testified that he determined an "as-is value" of $13,000 for the subject property "as of the time [he] did this report." Nasset testified

that he determined a two to three percent decline in the market and, factoring in that market decline, he concluded a value of $14,500 for the subject property as of January 1, 2010. Nasset testified that manufactured dwellings not affixed to land depreciate faster than those that are affixed to land; he likened them to cars. Nasset testified that the market for manufactured dwellings has declined but not as severely as the market for "stick homes." Plaintiff testified that there is no market for manufactured dwellings more than 20 years old, noting that many manufactured home parks have restrictions with respect to the age of properties in the park.

Witters testified that he identified five comparable sales of manufactured homes, four of which were sales of homes situated in parks "with no land associated with them." (*See* Def's Ex A at 5-7, 8.) He testified that sales of manufactured homes in parks are most comparable to the subject property because land is not included in the sale price, nor are costs associated with transporting and setting up the homes. Witters testified that he adjusted for market conditions by 0.5 percent "per month change in value." (*See id.* at 8.) He testified that comparable sales 1 and 4 were adjusted for less than average conditions, size differences, and number of bedrooms. (*See id.* at 5, 6, 8.) Witters testified that comparable sale 2 was adjusted for the cost of having to move the property from one site to another, as well as time, condition, and size. (*See id.* at 5, 8.) Witters testified that he determined a value range of $17,167 to $25,824 for the subject property as of January 1, 2010, noting that the 2010-11 real market value of the subject property is at the low end. (*Id.* at 9.) He testified that some adjustment to the value of the subject property as of January 1, 2010, would be necessary if the property were still affected by water damage.

The 2010-11 real market value determined by Defendant and sustained by the board of property tax appeals is $17,920. (Ptf's Compl at 2.) The 2010-11 maximum assessed value of the subject property is $22,710. (*Id.*) Plaintiff requests that the 2010-11 real market value be

reduced to $13,600, the 2009-10 real market value of the subject property,[2] based on the condition of the subject property. (*Id*. at 1.) Defendant requests that the 2010-11 real market value be sustained. (Def's Answer at 1.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2010-11 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor (Richardson)*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[3]

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three methods of valuation that are used to determine real market value: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003). All three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property. OAR 150-308.205-(A)(2)(a). The approach of valuation to be used is a question of fact to be determined on the record. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533 (1979). Both parties considered the sales comparison approach to be applicable. OAR 150-308.205-(A)(2)(c) states, in pertinent part:

---

[2] Nasset testified that the 2009-10 roll real market value of the subject property was $13,620.

[3] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

"In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

"The court looks for arm's-length sale transactions of property similar in size, quality, age and location * * * in order to determine the [real market value]" of the subject property. *Richardson*, WL 21263620 at *3.

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev. (Poddar),* 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Nasset testified that, according to his regional multiple listing service research, prices for manufactured dwellings ranged from $2,000 to $40,000. He determined an "as-is value" of $13,000 for the subject property, revising that value to $14,500 as of January 1, 2010. Nasset's broker's price opinion was not provided to the court or to Defendant and, consequently, the court has no way to evaluate the sales relied upon by Nasset or his adjustments, if any. Accordingly, Nasset's opinion of the subject property value as of January 1, 2010, is given very little weight. Plaintiff's other evidence in support of his requested real market value of $13,600 is Plaintiff's testimony that the water damage that occurred in 2008 has not yet been repaired. Plaintiff's

theory is that the 2009-10 real market value of the subject property accurately reflects the condition of the property at that time and, because the condition has not improved, the 2010-11 real market value should be the same. "It has long been held in Oregon tax cases that each tax year stands alone; thus, each tax year is its own cause of action." *Safley v. Jackson County Assessor and Dept. of Rev.*, TC-MD No 091206C at 8 (Dec 2, 2010), citing *U.S. Bancorp v. Dept. of Rev.*, 15 OTR 13, 15 (1999). Plaintiff's requested real market value of $13,600 requires the court to assume, first, that 2009-10 roll real market was correct and, second, that the 2009-10 roll real market value is indicative of the 2010-11 real market value. The 2009-10 tax year is not at issue in this appeal and the court cannot base the 2010-11 real market value on Plaintiff's assumptions.

The court finds that Plaintiff failed to prove by a preponderance of the evidence that the 2010-11 real market value of the subject property was $13,600. Defendant presented persuasive evidence in support of the 2010-11 roll real market value of $17,920.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

After careful consideration of the testimony and evidence presented, the court finds that the 2010-11 real market value of the subject property identified as account M131561 was $17,920. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of January 2012.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on January 26, 2012. The Court filed and entered this document on January 26, 2012.*